**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **JOSEPH F. BOND, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **NO. 3:19-cv-00592** |
| ) | |
| **D.C.S.O., et al.,** ) | **JUDGE CAMPBELL** |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff Joseph F. Bond, Jr., a pretrial detainee at the Davidson County Sheriff's Office ("DCSO") in Nashville, Tennessee, filed a pro se civil rights action under 42 U.S.C. § 1983 against DCSO and Daron Hall. (Doc. No. 1.) He also filed applications to proceed in this Court without prepaying fees and costs. (Doc. Nos. 2, 6, 8.)

## I. APPLICATIONS TO PROCEED AS A PAUPER

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's in forma pauperis applications that he cannot pay the full filing fee in advance, his applications (Doc. Nos. 2, 6, 8) will be granted. The $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

## II. INITIAL REVIEW

Under the screening requirements of the Prison Litigation Reform Act ("PLRA"), the Court must conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The Court must also construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736,

739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the factual

allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434,

437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

## A.    Factual Allegations

Some of Plaintiff's handwriting is barely legible, and his style of punctuation and grammar

make the complaint difficult to comprehend. In providing a narrative account of the facts

supporting his case, Plaintiff also includes unrelated commentary and allegations about other

people. Nonetheless, drawing the necessary reasonable inferences and accepting any potentially

relevant factual allegations as true, the Court has established the following summary of events for

the purpose of conducting an initial review.

On or around May 24, 2019, Plaintiff alleges that he was "joy riding" his new truck in the

back yard of his house. (Doc. No. 1 at 7.) He then pulled the truck to his mother's front door and

got out. (*Id.*) At that point, police officers pointed rifles and laser sights at Plaintiff. (*Id.*) Fearing

for his life, Plaintiff dropped to his knees. (*Id.*) The officers arrested Plaintiff and transported him

to the Davidson County Sheriff's Office on May 24. (*Id.*) He is awaiting trial. (*Id.*)

When he was booked at DCSO, Plaintiff realized that police officers had stolen his wallet

and cell phone. (*Id.*) He got a laundry bag that night (*id.* at 10), and he placed in the bag his legal

paperwork (Doc. No. 5 at 1), Bible, "daily bread" book (Doc. No. 1 at 11), clothing, and soap (*id.*

at 8). Plaintiff was moved to a holding cell, and he did not have food and water until he was moved

to "K-pod" around 10:00 a.m. on May 25. (*Id.* at 7–8.)

On June 22, several guards and Officer Trey moved Plaintiff to "J-3" (*id.* at 8; Doc. No. 5

at 1), where he allegedly endured "the most pain [he] had to deal with in all [his] life" (Doc. No.

1 at 7). He could not take his laundry bag, and DCSO staff took Plaintiff's jump suit. (Doc. No. 5

at 1.) Plaintiff had no mattress, shoes, socks, blanket, or clothing. (Doc. No. 1 at 8.) The guards turned off the water in his cell, and neither the toilet nor the light worked. (*Id.*) For six days, he had to drink toilet water and sleep on the concrete floor (*id.*) or a metal bunk (Doc. No. 5 at 1–2).

Plaintiff told "several officers" that the water and toilet did not work, that he needed to bathe, and that he did not have a jumpsuit or mattress. (Doc. No. 1 at 8.) He talked to a Lieutenant every day to try to figure out what was going on, and the Lieutenant told Plaintiff that he would get extra food if he calmed down. (Doc. No. 5 at 2.) Plaintiff also told "several" Lieutenants and Sergeants that he needed his laundry bag, but the bag was missing. (Doc. No. 1 at 8.) Plaintiff alleges that he submitted at least 20 grievances, and he experienced mental and physical pain. (*Id.*)

On June 28, Plaintiff received a mattress and jumpsuit.[1] (*Id.* at 9.) He asked a Lieutenant about the location of his clothes and laundry bag. (*Id.*) Sergeant Brown gave Plaintiff one pair of boxers, one pair of socks, and one bath towel with some soap. (*Id.*) Plaintiff alleges that he filed 7 grievances "on this situation." (*Id.*)

On June 31,[2] night shift Officer Meadow and a male nurse lied about Plaintiff. (*Id.*; Doc. No. 5 at 2.) Plaintiff alleges that Meadow "tormented" him by hitting and kicking his cell door. (Doc. No. 5 at 2.) Plaintiff "lash[ed] back" and Meadow "called a code" on Plaintiff. (*Id.*) Plaintiff was then moved to a "safe cell" (Doc. No. 1 at 9), where his "naked body was given a turtle shell like vest to put on" (Doc. No. 5 at 2). A Lieutenant came to the cell and told Plaintiff that he would "look into" the location of Plaintiff's property. (Doc. No. 1 at 9; Doc. No. 5 at 2.)

On July 1, Plaintiff saw a mental health nurse, who was "shocked" to see him in the safe cell. (Doc. No. 5 at 2.) Plaintiff was then moved to "J upper 2" (Doc. No. 1 at 9) and put on some

---

[1]    In a supplement to the complaint, however, Plaintiff alleges that he did not receive clothes and a jump suit until July 1. (Doc. No. 5 at 2.)

[2]    The Court takes judicial notice that the month of June has only 30 days.

kind of mental health medication (Doc. No. 5 at 2). On July 2, Plaintiff was allowed his only telephone call since he arrived at DCSO. (Doc. No. 1 at 11; Doc. No. 5 at 3–4.) On July 3, Mr. Joe allowed Plaintiff to move to "I upper 15." (Doc. No. 1 at 9.)

That same day, Plaintiff filled out a sick call request. (Doc. No. 5 at 3.) On July 5, Plaintiff saw a doctor and told him that, due to the conditions in J-3, his right big toe and right ankle kept "popping in and out of place," and his big toe was frostbitten. (*Id.* at 3.) According to Plaintiff, the doctor responded that it was "best to let [his] big toe fall off on its own" and gave him pain medication. (*Id.*) Plaintiff also has bursitis[3] in his left elbow and metal plates in his left arm. (*Id.*) Plaintiff alleges that the doctor ordered him an arm sleeve and an elastic bandage for his ankle. (*Id.*) Some days later, Nurse Ashley told Plaintiff that he would not be getting the arm sleeve or ankle bandage because of his placement in "I upper 15." (*Id.*) He told Nurse Ashley that he was still in pain, but she still refused to order the sleeve and bandage. (*Id.*)

On July 7, Plaintiff received "new white clothing," but he still has not received his laundry bag. (Doc. No. 1 at 9, 11.) He also alleges that he ordered soap, a soap dish, and a hair pick from commissary, but he has not received these items. (*Id.* at 9.)

**B.      Standard of Review**

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S.

---

[3]      Plaintiff alleges that he has "bracidose" (Doc. No. 5 at 3), but the Court assumes that he is referring to bursitis.

662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**C.     Discussion**

"To prevail on a cause of action under [Section] 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010)).

1. <u>Failure to State an Official-Capacity Claim</u>

Plaintiff names only two defendants—Davidson County Sheriff's Office, and Daron Hall. As an initial matter, Plaintiff fails to state a claim against the Davidson County Sheriff's Office because it is a jail facility, "not a 'person' or legal entity subject to suit under 42 U.S.C. § 1983." *McIntosh v. Camp Brighton*, No. 14–CV–11327, 2014 WL 1584173, at \*2 (E.D. Mich. Apr. 21, 2014) (collecting cases). The Court, however, may liberally construe Plaintiff's reference to DCSO as an attempt to impose liability on Davidson County itself.

As to Daron Hall, Plaintiff checked a box on the complaint form reflecting that he brings this action against Hall in his official capacity. (Doc. No. 1 at 2.) Plaintiff alleges that Defendant Hall is a DCSO employee. (*Id.*) "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, Plaintiff's official-capacity claim against Hall is essentially a claim against Davidson County as well.

A municipal entity like Davidson County may be liable under Section 1983 only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). To state a claim against Davidson County, Plaintiff must allege that he "suffered a constitutional violation" and that the County's "policy or custom directly caused the violation." *Hadrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell*, 436 U.S. at 690–92). Here, even liberally construing the complaint, Plaintiff does not allege that any of the unconstitutional conduct in the complaint was caused by a policy or custom of Davidson County. Plaintiff, therefore, fails to state a claim against Davidson County, and DCSO will be dismissed. Likewise, Plaintiff's official-capacity claims against Defendant Hall will be dismissed.

2. Failure to State an Individual-Capacity Claim

On the complaint form, Plaintiff did not check either "yes" or "no" to reflect whether he brings this action against Defendant Hall in his individual capacity. (Doc. No. 1 at 2.) Even assuming that Plaintiff is attempting to assert individual-capacity claims against Hall, however, he fails to state a claim because he does not make any specific allegations against Hall in the body of the complaint. To the extent that Plaintiff seeks to hold Defendant Hall individually liable as a supervisor of the Davidson County Sheriff's Office, "Section 1983 liability must be premised on more than . . . the right to control one's employees." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Thus, a claim against a supervisor official "must fail . . . unless 'the supervisor encouraged [a] specific incident of misconduct or in some other way directly participated in it.'" *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002)). "At a

6

minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* at 803 (quoting *Combs*, 315 F.3d at 558).

Here, as stated above, Plaintiff does not make any allegations against Defendant Hall, much less allege that he directly participated in any specific instances of unconstitutional conduct. "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corr. Corp. of. Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–57 (1978)). Accordingly, the complaint fails to state a claim against Defendant Hall in his individual capacity at this juncture.

3. Permission to File an Amended Complaint

Rather than dismiss the complaint for failure to state a claim, the Court will allow Plaintiff an opportunity to file an amended complaint. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA."). The Court will provide Plaintiff specific directions for filing an amended complaint in the accompanying Order.

### III. CONCLUSION

For these reasons, Plaintiff's applications to proceed in forma pauperis will be granted, and Plaintiff will have an opportunity to file an amended complaint.

The Court will enter an appropriate Order.

_____
WILLIAM L. CAMPBELL, JR
UNITED STATES DISTRICT JUDGE